UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

PHILIPPE HOUTAKKERS,

    Plaintiff,

v.

ISLAMORADA WATERSPORTS, LLC,
SEVEN MARINE SPORTS,
FLYING FISH FLIGHT SCHOOL, INC. f/k/a
FLYING FISH, INC.,
DAVID B. LANGE, individually,
M'LEIGHA LANGE, individually, and
JOHN LASK, individually,

    Defendants.

_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

    Plaintiff sues Defendant and alleges:

### PRELIMINARY ALLEGATIONS

1.  At all times material, Plaintiff, PHILIPPE HOUTAKKERS ("HOUTAKKERS") was and is a resident of the United Kingdom and over the age of 18.

2.  At all times material, Defendant ISLAMORADA WATERSPORTS LLC ("ISLAMORADA WATERSPORTS") was and is a Florida Limited Liability Company with its principal place of business in the State of Florida, and in particular, Monroe County.

3.  At all times material, the owners of Defendant ISLAMORADA WATERSPORTS LLC are residents of the State of Florida.

4.  At all times material, Defendant SEVEN MARINE SPORTS ("SEVEN MARINE") was and is an unregistered company that was and is conducting business in the State of Florida, and in

particular, Monroe County.   SEVEN MARINE is advertised as the parent company of ISLAMORADA WATERSPORTS that services and sells Yamaha motors, *inter alia*.   SEVEN MARINE is also identified as the owner of the subject vessel described fully below.

5.   At all times material, the owners of Defendant SEVEN MARINE SPORTS are residents of the State of Florida.

6.   At all times material, Defendant FLYING FISH FLIGHT SCHOOL, INC. f/k/a FLYING FISH, INC. ("FLYING FISH") is a corporation with its principal place of business in the State of Florida.  FLYING FISH is registered with the State of Florida as doing business at 81954 Overseas Highway, Islamorada, Florida 33036, where ISLAMORADA WATERSPORTS and SEVEN MARINE conduct their business.

7.   At all times material, Defendants ISLAMORADA WATERSPORTS, LLC and SEVEN MARINE SPORTS, were owned by Defendants DAVID LANGE and M'LEIGHA LANGE.

8.   At all times material, Defendants DAVID LANGE and M'LEIGHA LANGE were and are residents of Monroe County, Florida and are otherwise *sui juris*.

9.   At all times material, JOHN LASK ("LASK" or "TOUR GUIDE") was and is a resident of Monroe County, Florida and is otherwise *sui juris*.

10. All acts giving rise to the allegations in Plaintiff's Complaint arose in Monroe County, Florida.

11. The matter in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. § 1332.  In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.

12. ISLAMORADA WATERSPORTS, SEVEN MARINE, FLYING FISH, DAVID LANGE and M'LEIGHA LANGE, will be referenced collectively as the "ISLAMORADA DEFENDANTS,"

as though they were referenced individually and in such a manner that each retains the individuality of each entity or individual herein.

13. At all times material, the ISLAMORADA DEFENDANTS owned, managed and operated a business located in Monroe County, Florida, providing group personal watercraft ("PWC") tours to its paying customers in the waters surrounding Islamorada, FL.

14. At all times material, the ISLAMORADA DEFENDANTS owned, maintained, and/or leased a fleet of PWCs to be operated by its paying customers in the course of its PWC group tours.

15. At all times material, the ISLAMORADA DEFENDANTS are in the business of renting Personal Watercraft/Jet Skis/Wave Runners, with motors of 10 horsepower or greater, at Whale Harbor Marina, Robbie's Marina, and Bud N Mary's Marina in Islamorada, Monroe County, Florida.

16. At all times material, the ISLAMORADA DEFENDANTS represented to the public through its sales associations, promotional literature, and website that its PWC tours were safe for individuals with little or no previous experience operating a PWC.

17. At all times material hereto, the ISLAMORADA DEFENDANTS, rented, leased or chartered vessels to the general public, pursuant to Florida Statute §327.54.

18. At all times material hereto, Defendant, ISLAMORADA WATERSPORTS, was owned and/or managed by SEVEN MARINE and/or FLYING FISH.

19. At all times material hereto, Defendant SEVEN MARINE, was owned and/or managed by Defendants DAVID B. LANGE and M'LEIGHA LANGE.

20. At all times material, the subject vessel was an 11 foot 2017 PWC, manufactured by Yamaha Motor Corp, which used an inboard motor powering a water jet pump as its primary source of motive power; bearing the Hull Identification Number: YAMA2369L617 and Florida Vessel Registration Number: FL2245RG (hereinafter "subject vessel").

21. At all times material, the subject vessel was a member of a flotilla of other PWC vessels, with common or related ownership, registration and utilized for a common business purpose.

22. The ISLAMORADA DEFENDANTS owned, managed and operated the subject vessel located in Monroe County, Florida, rented and/or leased to its paying customers in the waters surrounding Islamorada, Florida.

23. At all times material, the ISLAMORADA DEFENDANTS owned, maintained, and/or serviced a fleet of PWCs to be operated by its paying customers in the course of its PWC group tours.

24. At all times material, the ISLAMORADA DEFENDANTS represented to the public through its sales associations, promotional literature, and website that its PWC tours were safe for individuals with little or no previous experience operating a PWC.

25. At all material times, the ISLAMORADA DEFENDANTS rented, leased, or chartered the subject vessel, to Plaintiff and others for consideration.

26. At all material times, the ISLAMORADA DEFENDANTS were liveries as contemplated by Florida Statute 327.54 and subject to the Florida Statutes regulating liveries.

27. At all times material, Defendant LASK was an employee and/or agent of the ISLAMORADA DEFENDANTS and was duly acting in the course and scope of his employment.

28. On or about May 19, 2017, Plaintiff HOUTAKKERS was a paying customer of the ISLAMORADA DEFENDANTS and participated in a PWC tour in the surrounding waters of Islamorada, Florida. The subject tour was operated by the ISLAMORADA DEFENDANTS.

29. On or about May 19, 2017, the ISLAMORADA DEFENDANTS rented and/or leased and/or chartered the subject vessel to Plaintiff HOUTAKKERS.

30. On or about May 19, 2017, the ISLAMORADA DEFENDANTS failed to comply with

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

Florida Statute §327.39 by failing to instruct Plaintiff HOUTAKKERS in the safe handling of a personal watercraft in connection with renting and/or leasing and/or chartering the Vessel.

31. On or about May 19, 2017, the ISLAMORADA DEFENDANTS failed to comply with Florida Statute §327.54 in renting and/or leasing and/or chartering the Vessel to Plaintiff HOUTAKKERS.

32. On or about May 19, 2017, the ISLAMORADA DEFENDANTS failed to comply with Florida Statute §327.395 in renting and/or leasing and/or chartering the Vessel to Plaintiff HOUTAKKERS, a person born on or after January 1, 1988.

33. Plaintiff HOUTAKKERS was born on July 16, 1988.

34. Plaintiff HOUTAKKERS was a novice with little to no experience operating a PWC. Plaintiff HOUTAKKERS was not provided with proper, adequate or sufficient training and/or instruction prior to the subject tour.

35. On or about May 19, 2017, Plaintiff HOUTAKKERS was operating a PWC in the waters surrounding Islamorada, Florida while on the ISLAMORADA DEFENDANTS' guided tour.

36. On or about May 19, 2017, LASK, the only guide for the PWC tour, led the group by riding ahead of them in the narrow channel of Robbie's Wheel Ditch in the surrounding waters of Islamorada, Florida.

37. On or about May 19, 2017, LASK led the PWC tour travelling at high speeds during strong wind conditions, specifically, 15-25 MPH.

38. On or about May 19, 2017, during the tour while heading north in the narrow channel of Robbie's Wheel Ditch near Islamorada, Florida, Plaintiff HOUTAKKERS was struck by mangrove branches and was ejected from the subject PWC.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

39. On or about May 19, 2017, LASK rode ahead of the group and, therefore, Plaintiff was operating the Vessel through the channel unsupervised.

40. At the time of Plaintiff HOUTAKKERS' subject incident and injuries, LASK, was unaware of the subject incident.

41. On or about May 19, 2017, Plaintiff HOUTAKKERS was operating a PWC without the required commission-approved boater education course and without any supervision.

42. Rather than providing Plaintiff HOUTAKKERS with adequate training, instruction, guidance and/or supervision, the ISLAMORADA DEFENDANTS allowed him to operate a vessel that caused him severe injuries, in violation of Florida Statute §327.39.

43. Rather than requiring Plaintiff HOUTAKKERS to comply with the commission-approved boater education course, the ISLAMORADA DEFENDANTS allowed him to operate a vessel that caused him severe injuries, in violation of Florida Statute §327.54.

44. On or about May 19, 2017, the Florida Fish and Wildlife Conservation Commission issued a boating accident report regarding the subject incident.

45. As a result of the aforementioned violations, negligence and carelessness of the ISLAMORADA DEFENDANTS and LASK, the Plaintiff HOUTAKKERS suffered serious personal injuries including, but not limited to, traumatic brain injury, subdural hematoma, right hand injuries, lacerations to the head, and necessitating surgery.

### Count I – Negligence Against the Islamorada Defendants

Plaintiff re-alleges, adopts and incorporates by reference the allegations in paragraphs one (1) through forty-five (45) as though alleged originally herein.

46. At all times material, the ISLAMORADA DEFENDANTS owed a duty to the public, including and in particular, Plaintiff HOUTAKKERS, to exercise reasonable care in the operation, supervision, and management of its group PWC tours to prevent foreseeable injury.

47. At all times material, the ISLAMORADA DEFENDANTS, by and through its employees, representatives, agents, and/or servants, breached its duty of care to Plaintiff HOUTAKKERS and were negligent in one or more of the following ways.

    a. Failing to provide adequate pre-rental or pre-ride instructions to the operator(s) of the Vessel;

    b. Failing to adequately train its personnel;

    c. Failing to provide adequately trained personnel to provide adequate pre-rental or pre-ride instructions to the operator(s) of the Vessel;

    d. Failing to inspect the Vessel for unseaworthy conditions;

    e. Failing to maintain proper and adequate safety equipment aboard the subject Vessel;

    f. Failing to adequately maintain the Vessel;

    g. Failing to ensure the safety of the Vessel;

    h. Failing to adequately ascertain and/or confirm the ability of the operator(s) of the Vessel before entrusting the Vessel;

    i. Failing to adequately supervise the operation of the Vessel;

    j. Failing to provide adequate training and/or instruction to Plaintiff;

    k. Failing to adequately restrict the operation of the Vessel to qualified operator(s);

    l. Failing to adequately warn of the hazards of the operation of personal watercrafts in general and, more specifically, the subject Vessel;

    m. Failing to provide learning key to the Vessel;

    n. Failing to perform a pre-ride inspection of the Vessel;

    o. Failing to warn of the lack of directional control of the Vessel while in use;

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

p. Failing to adequately advise of safe stopping distances necessary to safely operate the subject Vessel including, but not limited to the fact that stopping distance will vary depending on initial speed, load, wind, number of riders and water conditions;

q. Failing to conduct a pre-ride visual evaluation of the proficiency of operator(s) before entrusting the Vessel;

r. Failing to warn that operating the Vessel with a passenger makes the Vessel handle differently than operating the Vessel without a passenger;

s. Failing to promulgate and/or enforce adequate policies and procedures to ensure the safe entrustment of the Vessel to a qualified operator(s);

t. Failing to promulgate and/or enforce adequate training and/or supervision to ensure the safe entrustment of the Vessel to a qualified operator(s);

u. Failing to provide proper safety equipment aboard the Vessel;

v. Failing to provide adequate safety training to the operator(s) of the Vessel;

w. Failing to adequately warn the operator(s) of the Vessel of risks associated with operating a PWC with passengers;

x. Failing to take all reasonable precautions to prevent the incident and injuries to the Plaintiff.

y. Failing to provide adequate safety training to the other operator(s) of PWCs during the tour;

z. Failing to operate the subject PWC tour in a safe and reasonable manner;

aa. Failing to implement adequate policies and procedures for the safe operation of its PWC tours;

bb. Failing to provide the subject PWC tour with adequate number of tour guides;

cc. Failing to provide adequate instruction and training to its PWC tour customers;

dd. Failing to ensure that PWC tour customers fully understood the operational characteristics of the subject PWC;

ee. Failing to ensure that PWC tour customers were able to understand and appreciate any training and instruction;

ff. Failing to conduct a properly and adequate pre-ride visual evaluation of the proficiency of the PWC tour customers;

gg. Failing to adequately and reasonably monitor, supervise and control its PWC tour customers;

hh. Failing to adequately assess weather and wind conditions prior to and during its PWC tours;

ii. Failing to slow down and encouraging PWC tour customers to travel at a fast rate of speed despite customer's inability to control the PWC while the tour was going too fast;

jj. Failing to ensure that its PWC tour customers did not exceed a reasonable speed under the circumstances;

kk. Failing to comply with Federal and state regulations, statutes, and codes with respect to its group PWC tours, including but not limited to Fla.Stat.§327.54, Fla.Stat.§327.39, Fla. Admin. Code §68D-36.107 thereby constituting *negligence per se*;

ll. Failing to hire reasonably safe, competent, and experienced tour guides for use on its PWC tours;

mm.   Failing to ensure that its tour guides meet all applicable certification requirements for the operation of PWC tours;

nn. Failing to provide adequate training, instruction, monitoring, and supervision to its tour guides;

oo. Failing to properly and adequately investigate the TOUR GUIDE who supervised the subject PWC tour;

pp. Failing to use reasonably safe routes and/or paths of travel on its PWC tours;

qq. Utilizing a route for its PWC tour which it knew or should have known was unreasonably dangerous;

rr. Leading its customers into a known dangerous condition;

ss. Failing to provide adequate and proper information regarding its PWC tours; and/or

tt. Other negligent acts and/or omission learned in discovery.

48. As a direct and proximate result of the above-mentioned negligence of the ISLAMORADA DEFENDANTS, Plaintiff HOUTAKKERS was ejected from his PWC into the rough mangroves suffering serious injuries.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

49. As a further direct and proximate result of the above-mentioned negligence of the ISLAMORADA DEFENDANTS, Plaintiff HOUTAKKERS was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and Plaintiff's working ability has been impaired.  The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against Defendant and demands trial by jury.

## Count II – Negligence under Vicarious Liability Theory Against the Islamorada Defendants

Plaintiff re-alleges, adopts and incorporates by reference the allegations in paragraphs one (1) through forty-five (45) as though alleged originally herein.

50. At all times material, the ISLAMORADA DEFENDANTS were and are vicariously liable for the negligent acts and omissions of its employees, agents, and representatives pursuant to the doctrine of *respondeat superior*.

51. At all times material, Defendant LASK was subject to the control and/or right to control by the ISLAMORADA DEFENDANTS.

52. At all times material, Defendant LASK was an employee, agent, representative or servant for the ISLAMORADA DEFENDANTS.

53. At all times material, Defendant LASK was acting within the scope of his employment and/or agency.

54. At all times material, the ISLAMORADA DEFENDANTS acknowledged that Defendant LASK would act on their behalf, and Defendant LASK accepted the undertaking.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

55. At all times material, the ISLAMORADA DEFENDANTS are vicariously liable for the acts of Defendant LASK based on the following:

a.  LASK worked on the subject premises, which was owned and/or operated by the ISLAMORADA DEFENDANTS;

b.  LASK wore a uniform provided by the ISLAMORADA DEFENDANTS;

c.  LASK represented himself as the ISLAMORADA DEFENDANTS' tour guide to the Plaintiff;

d.  LASK served in the capacity of both an employee and tour guide;

e.  LASK was required to participate and engage with fare paying customers leading up to and including the PWC tours;

f.  LASK was under the control of the ISLAMORADA DEFENDANTS and followed their rules and regulations;

g.  LASK communicated directly with the ISLAMORADA DEFENDANTS to provide instruction to fare paying customers, including Plaintiff;

h.  The literature provided by the ISLAMORADA DEFENDANTS and its representatives showed the doctor(s) as crewmembers and employees of CARNIVAL;

i.  LASK wore the ISLAMORADA DEFENDANTS' insignia in various places on the subject premises, PWCs, and where other employees of the ISLAMORADA DEFENDANTS worked;

j.  LASK was employed part-time or full-time the ISLAMORADA DEFENDANTS;

k.  LASK was paid a salary by the ISLAMORADA DEFENDANTS; and/or

l.  LASK spoke to the Plaintiff as though they had authority to do so by the ISLAMORADA DEFENDANTS.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

56. At all times material hereto, Defend the ISLAMORADA DEFENDANTS had a duty to provide Plaintiff HOUTAKKERS with reasonable care under the circumstances.

57. At all times material hereto, Defendant LASK owed a duty to provide Plaintiff with reasonable care under the circumstances.

58. On or about May 19, 2017, Defendant LASK breached his duty to provide reasonable care under the circumstances by:

    a.  Failing to comply with adequate pre-rental or pre-ride instructions to the operator(s) of the Vessel;

    b.  Failing to inspect the Vessel for unseaworthy conditions;

    c.  Failing to maintain proper and adequate safety equipment aboard the Vessel;

    d.  Failing to ensure the safety of the Vessel;

    e.  Failing to adequately ascertain and/or confirm the ability of the operator(s) of the subject Vessel before entrusting the Vessel;

    f.  Failing to adequately supervise the operation of the Vessel;

    g.  Failing to provide adequate training and/or instruction to Plaintiff;

    h.  Failing to adequately restrict the operation of the Vessel to qualified operator(s);

    i.  Failing to adequately warn of the hazards of the operation of personal watercrafts in general and, more specifically, the Vessel;

    j.  Failing to provide learning key to the Vessel;

    k.  Failing to perform a pre-ride inspection of the Vessel;

    l.  Failing to warn of the lack of directional control of the Vessel while in use;

    m.  Failing to adequately advise of safe stopping distances necessary to safely operate the Vessel including, but not limited to the fact that stopping distance will vary depending on initial speed, load, wind, number of riders and water conditions;

    n.  Failing to conduct a pre-ride visual evaluation of the proficiency of operator(s) before entrusting the Vessel;

o.  Failing to warn that operating the Vessel with a passenger makes the Vessel handle differently than operating the Vessel without a passenger;

p.  Failing to comply with adequate policies and procedures to ensure the safe entrustment of the Vessel to a qualified operator(s);

q.  Failing to comply with adequate training and/or supervision to ensure the safe entrustment of the Vessel to a qualified operator(s);

r.  Failing to provide proper safety equipment aboard the Vessel;

s.  Failing to provide adequate safety training to the operator(s) of the Vessel;

t.  Failing to adequately warn the operator(s) of the Vessel of risks associated with operating a PWC with passengers;

u.  Failing to take all reasonable precautions to prevent the incident and injuries to the Plaintiff;

v.  Failing to comply with adequate safety training to the other operator(s) of PWCs during the tour;

w.  Failing to operate the subject PWC tour in a safe and reasonable manner;

x.  Failing to follow adequate policies and procedures for the safe operation of its PWC tours;

y.  Failing to provide and/or conduct the subject PWC tour with adequate number of tour guides;

z.  Failing to provide adequate instruction and training to its PWC tour customers;

aa. Failing to ensure that PWC tour customers fully understood the operational characteristics of the PWC;

bb. Failing to ensure that PWC tour customers were able to understand and appreciate any training and instruction;

cc. Failing to conduct a properly and adequate pre-ride visual evaluation of the proficiency of the PWC tour customers;

dd. Failing to adequately and reasonably monitor, supervise and control its PWC tour customers;

ee. Failing to adequately assess weather and wind conditions prior to and during the subject PWC tour;

ff.  Failing to slow down and encouraging PWC tour customers to travel at a fast rate of speed despite customer's inability to control the PWC while the tour was going too fast;

gg. Failing to ensure that its PWC tour customers did not exceed a reasonable speed under the circumstances;

hh. Failing to comply with Federal and state regulations, statutes, and codes with respect to its group PWC tours, including but not limited to Fla.Stat.§327.54, Fla.Stat.§327.39, Fla. Admin. Code §68D-36.107 thereby constituting *negligence per se*;

ii.  Failing to provide reasonably safe, competent, and experienced tours on its PWC tours;

jj.  Failing to ensure that its tours meet all applicable certification requirements for the operation of PWC tours;

kk. Failing to provide adequate training, instruction, monitoring, and supervision to its tour guides;

ll.  Failing to properly and adequately supervise the subject PWC tour;

mm.    Failing to use reasonably safe routes and/or paths of travel on its PWC tours;

nn. Utilizing a route for its PWC tour which he knew or should have known was unreasonably dangerous;

oo. Leading its customers into a known dangerous condition;

pp. Failing to provide adequate and proper information regarding its PWC tours;

qq. Failing to avoid an allision; and/or

rr.  Other negligent acts and/or omission learned in discovery.

59. As a direct and proximate result of the above-mentioned negligence of the ISLAMORADA DEFENDANTS, Plaintiff HOUTAKKERS was ejected from his PWC into the rough mangroves suffering serious injuries.

60. As a further direct and proximate result of the above-mentioned negligence of the ISLAMORADA DEFENDANTS, Plaintiff HOUTAKKERS was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability,

disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and Plaintiff's working ability has been impaired.  The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against Defendant and demands trial by jury.

### Count III – Negligence *Per Se* Against the Islamorada Defendants

Plaintiff re-alleges, adopts and incorporates by reference the allegations in paragraphs one (1) through forty-five (45) as though alleged originally herein.

61. On or about May 19, 2017, the ISLAMORADA DEFENDANTS rented and/or leased and/or chartered one of the subject Vessel, believed to be the 2017 Yamaha Personal Watercraft YAMA2369L617 to Plaintiff HOUTAKKERS.

62. At all material times, the ISLAMORADA DEFENDANTS' conduct of renting, leasing, or chartering the Vessel to another was regulated by Florida Statute § 327.54 and § 327.395 (collectively "the Livery Statutes").

63. On or about May 19, 2017, the ISLAMORADA DEFENDANTS failed to comply with Florida Statute §327.54 in renting and/or leasing and/or chartering the Vessel to Plaintiff HOUTAKKERS.

64. On or about May 19, 2017, the ISLAMORADA DEFENDANTS failed to provide adequate training to Plaintiff HOUTAKKERS in connection with its renting and/or leasing and/or chartering of the Vessel.

65. On or about May 19, 2017, Plaintiff HOUTAKKERS was struck by mangrove branches and was ejected from the subject PWC while operating the Vessel in a PWC guided tour heading north

in the narrow channel of Robbie's Wheel Ditch near Islamorada, Florida.

66. The Livery Statutes place restrictions on liveries leasing, hiring, and renting vessels and dictates certain topics of instruction which must be covered by the ISLAMORADA DEFENDANTS. *See* Fla. Stat. § 327.54.

67. On or about May 19, 2017, the ISLAMORADA DEFENDANTS violated their statutory duty under Fla. Stat. § 327.54 by not providing pre-rental or pre-ride instruction to operators, including, but not limited to:

    a.  Operational characteristics of the vessel to be rented; including, but not limited to:

        i.  Learning key to the Vessel;

        ii.  Lack of directional control of the Vessel while in use;

        iii.  Safe stopping distances necessary to safely operate the Vessel including, but not limited to the fact that stopping distance will vary depending on initial speed, load, wind, number of riders and water conditions;

        iv.  Failed to conduct a pre-ride visual evaluation of the proficiency of operator(s) before entrusting the Vessel;

        v.  Failed to warn that operating the Vessel with a passenger makes the Vessel handle differently than operating the Vessel without a passenger.

    b.  Safe vessel operation and vessel right-of-way.

    c.  The responsibility of the vessel operator for the safe and proper operation of the vessel.

    d.  Local characteristics of the waterway where the vessel will be operated.  *See* Fla. Stat. § 327.54(1)(e).

68. On or about May 19, 2017, the ISLAMORADA DEFENDANTS violated their statutory duty under Fla. Stat. § 327.395 by allowing Plaintiff HOUTAKKERS, born after January 1, 1988, to operate a vessel powered by a motor of 10 horsepower or greater without vessel photographic identification and a boater safety identification card issued by the commission, or a state-issued

identification card or driver license indicating possession of the boater safety identification card, which showed that he had:

    a.   Completed a commission-approved boater education course that meets the minimum 8-hour instruction requirement established by the National Association of State Boating Law Administrators;

    b.   Passed a course equivalency examination approved by the commission; or

    c.   Passed a temporary certificate examination developed or approved by the commission.

    *See* Fla. Stat. § 327.395(1)(a)-(c).

69. As a direct and proximate result of the above-mentioned negligence of the ISLAMORADA DEFENDANTS, Defendant LASK operated and conducted the PWC tour at high speed, in a narrow waterway, with strong winds for PWC operators, including Plaintiff HOUTAKKERS, without the required commission-approved boater education course or its equivalent in violation of the Vessel Safety Statutes.

70. As a further direct and proximate result of the above-mentioned negligence of the ISLAMORADA DEFENDANTS, Plaintiff HOUTAKKERS was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and Plaintiff's working ability has been impaired.  The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against Defendant and demands trial by jury.

## <u>Count IV Negligent Entrustment Against the Islamorada Defendants</u>

Plaintiff re-alleges, adopts and incorporates by reference the allegations in paragraphs one (1) through forty-five (45) as though alleged originally herein:

71. At all times material, the ISLAMORADA DEFENDANTS owed a duty to exercise reasonable care to members of the public, including Plaintiff HOUTAKKERS, in the use operation, and entrustment of its PWC.

72. At all times material, the ISLAMORADA DEFENDANTS entrusted LASK with the subject PWC that he was operating on the group PWC tour.

73. At all times material, the subject PWC was entrusted to LASK, an employee of the ISLAMORADA DEFENDANTS, was under the control of the ISLAMORADA DEFENDANTS, and they had power, authority, custody, and dominion over the subject PWC.

74. At all times material, the ISLAMORADA DEFENDANTS had actual and/or constructive knowledge of LASK's inexperience, lack of training, lack of instruction, and/or dangerous propensities on group PWC tours.

75. At all times material, the ISLAMORADA DEFENDANTS knew or should have known that LASK was likely to operate the PWC in such a manner as to create an unreasonable risk of harm to others, including Plaintiff HOUTAKKERS.

76. The ISLAMORADA DEFENDANTS were negligent and breached its duty of care by negligently entrusting the subject PWC to LASK, who was a source of danger to members of the public, including Plaintiff HOUTAKKERS.

77. The ISLAMORADA DEFENDANTS' breach of the duty of reasonable care encompasses but is not limited to the following acts or omissions:

    a.  Allowing LASK to guide the subject PWC tour to operate its PWC;

    b.  Allowing LASK to participate in its group PWC tour;

    c.   Allowing LASK to operate its PWC in an unsafe and reckless manner;

    d.   Allowing LASK to guide the subject tour in unsafe and strong wind conditions;

    e.   Allowing LASK to operate its PWC when it knew or should have known he did not possess adequate experience, training, and/or instruction to do so in a reasonably safe manner.

    f.   Allowing LASK to participate in its group PWC tour when it knew or should have known he did not possess adequate experience, training, and/or instruction to do so in a reasonably safe manner; and/or

    g.   All other negligent acts and/or omissions learned in discovery.

78. As a direct and proximate result of the above-mentioned negligence of the ISLAMORADA DEFENDANTS and LASK insisted that the tour continue at high speed despite the large waves and rough waters in the surrounding area.

79. As a further direct and proximate result of the above-mentioned negligence of the ISLAMORADA DEFENDANTS, Plaintiff HOUTAKKERS was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and Plaintiff's working ability has been impaired.  The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against Defendant and demands trial by jury.

## <u>Count V – Negligence Against Defendant John Lask</u>

Plaintiff re-alleges, adopts and incorporates by reference the allegations in paragraphs one (1) through forty-five (45) as though alleged originally herein.

80. At all times material, Defendant LASK owed a duty to the public, including and in particular, Plaintiff HOUTAKKERS, to exercise reasonable care in the operation, supervision, and management of its PWC group tours to prevent foreseeable injury.

81. At all times material, Defendant LASK breached his duty of care to Plaintiff HOUTAKKERS and was negligent in one or more of the following ways:

    a.  Failing to operate the subject PWC tour in a safe and reasonable manner;

    b.  Failing to keep a reasonable visual of the waterway/channel;

    c.  Failing to reasonably maintain proper visual contact with other vessels during the subject tour;

    d.  Failing to maintain proper visual contact with the operator(s) of vessels during the subject tour;

    e.  Failing to comply with applicable national and local navigable rules;

    f.  Failing to promptly, adequately, and/or reasonably attend to Plaintiff during the subject tour;

    g.  Failing to promptly, adequately, and/or reasonably assist Plaintiff during the subject tour;

    h.  Failing to operate his PWC at a reasonable speed;

    i.  Failing to adequately assess weather and wind conditions prior to and during the subject PWC tour;

    j.  Failing to avoid an allision;

    k.  Failing to operate his PWC with due regard for vessel congestion; and/or

    l.  All other negligent acts and/or omissions learned in discovery.

82. As a direct and proximate result of the above-mentioned negligence of Defendant, LASK insisted that the tour continue at high speed despite the large waves and rough waters in the surrounding area.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

83. As a further direct and proximate result of the above-mentioned negligence of the ISLAMORADA DEFENDANTS, Plaintiff HOUTAKKERS was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and Plaintiff's working ability has been impaired.  The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against Defendant and demands trial by jury.

Respectfully submitted,

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
*Attorneys for Plaintiff*
One Biscayne Tower, Suite 1776
2 S. Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By:   */s/ Jason R. Margulies*
**JASON R. MARGULIES**
Florida Bar No. 57916
jmargulies@lipcon.com
**STEFANIE A. BLACK**
Florida Bar No.: 111903
sblack@lipcon.com